Good morning again, Your Honor. May it please the Court, I'm Rich McWilliams, Assistant Federal Public Defender. I represent the appellant in this case, Darnell Polite. On Halloween of 2016, game leader officers at the Omaha Police Department bumped up a small scrum of 10 to 20 people congregating in a parking lot in northwest Omaha. When they arrived, the two officers got out of their car. One of the officers, the officer getting out of the passenger side of the police car, walked immediately up to Darnell Polite, the appellant, placed him in handcuffs. And he remained there in handcuffs for one hour until ultimately he was arrested. A firearm was found near where Darnell Polite had been standing and he was indicted for a violation of United States Code 922 G, which is a user of controlled substances in possession of a firearm. Mr. Polite moved to suppress his statement to the officers, the contents of his phone, and his DNA profile in a motion to suppress that alleging that basically the officers had detained him without reasonable suspicion and arrested him without probable cause and that those evidentiary items were fruits of the poisonous tree. The district court denied the motion to suppress based on essentially four factors. One, that Mr. Polite was encountered in a high crime area, which the Supreme Court in Brown v. Texas has found is not alone enough to detain someone. Secondly, that Mr. Polite engaged in what's called a furtive gesture because he kneeled behind or near a parked car. Third, the district court based its opinion on the officer's knowledge or his past interactions that the officer had with Mr. Polite. And fourth, the testimony of the officer that the officer heard a metallic sound hitting the ground from 30 feet away. Counsel, in terms of reasonable suspicion for the detention, even apart from everything else, wouldn't the brief kneeling behind the automobile as the officer approached, given the officer's knowledge of the situation, be enough for reasonable suspicion? No, Your Honor, it wouldn't. The kneeling here is something that everyone has done here, I would assume, is at one point knelt to tie their shoe. The Fonte Jones case decided by this circuit suggests that when we're talking about usual activity, things that human beings do every single day, that can't be considered a furtive gesture. We have thrown a lot into the pot of furtive gestures, and kneeling as one is walking away from a crowd is not alone enough to warrant one being placed immediately into handcuffs and held there over the course of an hour. More importantly, though, I think is the district court's reliance upon the last two facts, namely the officer's prior knowledge, alleged prior knowledge of Mr. Polite, and the officer's claim that he heard the sound of metal hitting the ground that are problematic. I think that based on the high crime area and the kneeling alone, that alone is not enough to detain someone. To detain someone because they are on a certain set of cross streets and they kneel behind a car would basically render the Fourth Amendment a nullity in certain chunks of Omaha. But it is these last two areas that I think that the district court could be a clear error. Say that again. In parts of Omaha, this would render this a nullity? Essentially, right. The gang, you know, has a belief that there are certain high crime areas. And in other cases, this is anecdotal, not in the record, that high crime areas are defined by 42nd Street East and Dodge Street North. That's an entire fourth of the city. That's Northeast Precinct. So if you kneel in that area, it's benign. Right. It's basically saying that the police then would have reasonable suspicion to at least temporarily detain you and place you in handcuffs. I don't believe that the Fourth Amendment could allow that. I mean, if, okay. Counsel, what crime did the officer believe that Mr. Polite had committed for purposes of probable cause? Well, ultimately, he was booked for carrying a concealed weapon. And ultimately, he was booked on state charges, which were ultimately dismissed in favor of federal prosecution. I'm asking at the time, what crime did he believe Mr. Polite was committing at the time he cuffed him? At the time he cuffed him, I don't think he could have believed he was committing any crime. Now, he did find a firearm, you know, 5, 10, 15, 20 seconds thereafter. But he immediately walked up to Mr. Polite and placed him in handcuffs. At what point was he under arrest? I believe at the point he was placed in handcuffs. I mean, ultimately, they stand outside in the parking lot for an hour before he's taken downtown. At some point, I would imagine that the detention ripens into an arrest. But when you place someone in handcuffs and detain them, I would assume at that point he was placed under arrest. We hear a number of cases, but so I may be confused on this, but wasn't Mr. Polite a convicted felon? He was not. No, he wasn't. He was not. Ultimately, he was indicted because during a statement that he gave thereafter, he admitted to smoking marijuana on a regular basis. So he was indicted under one of the other subsections of the prohibited person federal firearms statute, which prohibits patrolled substance users from possessing firearms. So at the time, whatever knowledge the officer had, he had never been convicted of that offense. Is that what you're saying? He had never been convicted of a felony. Ultimately, we take issue with, like I said, the last two prongs. The claim that the officer knew about Mr. Polite or recalled him specifically in that first 14 seconds before he was placed in handcuffs, I believe that was clear error. Throughout the course of the detention, which eventually ripens into an arrest, you see numerous instances of the officer, he doesn't know the gentleman's name, he has to look him up, he has to have his partner take the guy's name, he looks him up on his phone. The district court essentially states, and it's by adopting the magistrate judge's findings and recommendation, basically says that the officer knew and recalled his history with Mr. Polite in that first 14 seconds he was placed in handcuffs, and that is totally belied by all of the objective evidence. Secondly, we take issue with the claim that the officer heard the sound of metal hitting the ground. What happened essentially here, I believe the evidence shows, is that the officers bumped up or decided to come across this crowd of people, one of whom they recognized as a gang member. They placed the closest guy to them in handcuffs, they found firearms, and then in writing their reports, reverse engineered reasonable suspicion and probable cause. And I believe that if this court ratifies the testimony of officers claiming to hear the sound of metal hitting the ground, it will throw in to the furtive gesture, smelling marijuana emanating from cars, the various, the quiver of arrows that officers have for detaining people and searching them in their cars. I see I'm into my rebuttal time, I'd like to reserve that if I could. You may. You may proceed, counsel. Good morning, my name's Matt Learman, I'm the assistant United States attorney representing the appellee in this case, the United States of America. If I could start, I'd like to address the facts that Mr. McWilliams went into initially with respect to this case. I agree with them that on October 31st in the evening hours, approximately 10.35 PM, officers from the Omaha Police Department gang unit went to an apartment complex at 148th and Sailor Streets. This apartment complex was in a high crime area. In fact, it was an apartment complex that was known to be a Crips gang hangout. Officers knew this area because they had been there in the past. It was known for narcotics trafficking, firearms offenses, and past murders. Officers were requested to go to this apartment complex from the owners of the apartment complex, as well as management. They were tired of seeing... Did it turn out that Mr. Poteet was a member of this gang? He was. Upon the gang unit officers arriving in their unmarked patrol car, they initiated their emergency lights. Officer Sundermeier, one of the officers in that vehicle, initially noticed Polite, who he had contact with four months prior to that, at an arrest and a search warrant at Polite's house. Polite was an admitted gang member. So Sundermeier knew that from the beginning. There were other gang members that the officers from the gang unit recognized arriving at that location. Did you say there was an active warrant for his arrest at this time? No, sir. Four months prior to that, October 31st date, Officer Sundermeier was at a search warrant, had contact with Polite. So he knew who he was. He knew he was an admitted gang member. And he also knew his age, which is important in this case. So arriving on scene, they activate their emergency lights in their unmarked cruiser. They get out. Immediately upon getting out of the vehicle, the parties begin to disperse away from the officers. A group of individuals with known gang members goes in one direction, and Polite is effectively standing alone in front of a blue Chevy Impala. Sundermeier focuses on him. Initially, when Sundermeier sees him, he doesn't have anything in his hands. He immediately then ducks behind the front of that vehicle. After doing so, Officer Sundermeier hears what he describes in his testimony as being a loud thump. Counsel, let me ask you about that. I realize the setting of this case is a dark Halloween night. What I'm troubled with is the apparent supernatural activity that's going on here with an officer who's able to hear a metallic sound of a gun, which, by the evidence in the case, was set down on a grassy area from 30 feet away. Yeah. There's no evidence. And knowing the age of the defendant in advance, isn't your case really better placed upon the deferred gesture of the defendant rather than these other actions? I look to U.S. v. Prokopec, which even in light of the credibility standard, does allow us to find that this is just not credible. Yeah. I take issue with the idea that the firearm was placed on the grass. There's no testimony to support that. That's the allegation in Mr. McWilliams' brief, that somehow it was simply placed on the ground at the point that Mr. Polite knelt behind that vehicle. Counsel, doesn't the recording of the event say, and it's a direct quote, is that a gun you just put down over there? Okay. What Officer Sundermeyer testified to was hearing a metal thump, hearing what he described and he had heard before in past encounters where they had recovered guns off of gang members as being a gun tossed onto the ground. He heard that in the immediate area by Polite and then he heard it in an area to the east of Polite, approximately 10 feet. Whether or not Polite placed that down, whether or not he threw it down on the ground and kicked it, or whether or not he tossed it and it landed on the ground, it's not inherently incredible to think that an officer can hear a large metallic object striking the ground, especially when he's trained to do so and he's heard that in the past, according to Officer Sundermeyer's testimony. And that was the finding of the district court as well, Your Honor. So the district court described the areas, I mean, we've heard this described as a place where he just placed it on the grass, but the district court says that calling it grassy would be charitable. It was sort of a mixed gravel, grass, rock kind of a thing. Is that true or not? That is true. In fact, what the court said was that it's not inherently incredible that a firearm dropped on the ground might make a sound, even if it landed on grass that could charitably be described as patchy. That was in the district court's findings. That's the district court document 52, page 2. So essentially what the district court is seeing there is what was in the evidence. Looking at the pictures, you can see that it appears that the gun had just landed or bounced off a sidewalk and landed into that patchy area. And so Officer Sundermeyer hearing that contemporaneous with seeing Polite ducking behind the vehicle, hearing it, a second sound with the firearm, and then seeing Polite stand up behind that vehicle and approach Officer Sundermeyer, he then places him in handcuffs and briefly detains him to determine whether or not there's ongoing criminal activity. And in fact, what he heard was in fact true. Counsel, assuming that that created reasonable suspicion for the detention, what crime did the officer believe Polite was committing for purposes of probable cause? At least two crimes in this case. One would be being a minor in possession of a handgun. That's in violation of a city ordinance. Recall that Officer Sundermeyer's testimony was he knew that Polite was a minor. In other words, he was less than 21 years of age. State statute requires that if you're going to carry a concealed weapon, you have to be at least 21 years of age. That's state statute. City ordinance, Omaha City Ordinance requires that if you are in possession of a handgun, you have to be at least 21 years of age. Officer Sundermeyer recognizing Polite knew that he could not legally carry a concealed weapon. And again, Officer Sundermeyer's testimony was initially upon seeing Polite, he had nothing in his hands. He ducks behind that car and then Officer Sundermeyer hears that sound, which is distinct. That is a firearm being discarded. Having not seen it in plain open sight, it had to have been concealed on Mr. Polite. He detained him. He had immediately walked up to the area where he heard that sound and then saw that firearm sitting on that patchy, grassy area. A second firearm was recovered by the other group of gang members that Officer Sundermeyer's partner had engaged at that time. At what point was Mr. Polite under arrest? The district court found that he was under arrest at the point that he was taken up to the front of the car and Officer Sundermeyer verified what he had seen, which was a firearm that had been discarded by Polite. So at that point, he was under arrest. So what basis did the officer have to seize his cell phone prior to that time? To seize his cell phone? Well, at the point that he was under arrest, Officer Sundermeyer remained with Polite with the firearm. He seized his cell phone and essentially waited for the crime scene to come on station and to be able to document everything. Essentially what he was doing is he was maintaining the status quo. He wasn't allowing Polite to get on his cell phone and he was essentially standing by the firearm to ensure its integrity and that nobody else messed with it. So he seized it, but at no point did he go into it. Later, when Polite was then transferred down to central booking, he then waived his Miranda rights, consented to a buckle swab, and also consented to the search of his phone. All of those things, both of which were in the form, Your Honor. So in terms of the reasonable suspicion, it's certainly different than Jones, certainly different than Prokupiec case. Effectively, what Mr. McWilliams is asking you guys to do is to pass on the credibility of witnesses in this case. As this Court has said time and time again, the issue of credibility of witnesses is something that a trial court decides on, and those things are virtually unassailable on appeal, except for under really, really extreme circumstances. Prokupiec was the case that Mr. McWilliams cited, but that was an extreme circumstance in which an officer specifically testified to material misrepresentations in regards to a contemporaneous statement that was made in an in-car recording. The Court then decided that there wasn't substantial evidence to support the District Court's finding that the officer had just simply made an erroneous misstatement. There was nothing there. We don't have that here. The best objective evidence on the part of this officer is what he observed. That is, walking to the front of the car and confirming what he had heard. That is, that this defendant had discarded a firearm along with another gang member. So under those circumstances, I would ask that you affirm the District Court. Okay. Thank you, Counsel. Your time is up. The case is... I'm sorry, you have some time. Just a little bit. Sorry. Great. I want to... I started and I'll finish. First of all, I want to point out that during the government's argument, suddenly this gun is getting dropped, it's getting kicked, it's bouncing off sidewalks. The bottom line is that the furtive gesture which triggered allegedly Officer Sundermeyer's attention was kneeling. If the gun was going to be dropped or thrown on concrete or kicked, why the furtive gesture? What is suspicious about kneeling to the ground if the allegation is later that you threw the gun? What is suspicious in Officer Sundermeyer's world about kneeling is that it allows someone to set the gun down. It was set on grass. As the court pointed out, the words that come out of Officer Sundermeyer's mouth, it was put down over there. It was on grass. It was... I think Judge Girard classified it as patchy, but it was grass. It's October, Nebraska grass. It was green. And that's where it was put down. So the idea that the sound of it could be heard from 10 yards away, 30 feet away, while the scene is chaotic, while there are people asking questions, it's fanciful. And I urge the court to deal with the contradictions. The bottom line is that Officer Sundermeyer's testimony was contradicted. It was contradicted by his own on-scene statements, his statement to Detective Frodema that we bumped these guys up. His statements were contradicted by his partner's testimony. His partner gets out of the car way closer to polite than Sundermeyer does. He doesn't hear a gun drop. He doesn't see polite walking around without a gun. And that simple common sense defies it. If you kneel down and set something on grass, you don't hear it from 30 feet away. There are a number of contradictions similar to the Procupec case. Lastly, the idea that Officer Sundermeyer walked up and placed Mr. Polite in handcuffs because he felt he was a minor in possession of a concealed weapon is balderdash. He didn't know Mr. Polite's name. He didn't know his date of birth. He didn't know that he... He didn't recognize him for four months away. You could see in Government Exhibit 17, it's dark. There are flashing lights and Mr. Polite has a hoodie covering his face and is looking down at his phone. Polite was handcuffed because he was the closest one to Officer Sundermeyer and probably because he kneeled behind the car. And the idea that he wasn't seen with a gun, you could look at Officer Sundermeyer's answer. It was, I don't believe so, in terms of did you see him carrying anything in his hands. The bottom line is this detention lacked reasonable substitution and everything that comes after that's a fruit of the poisonous tree. Thank you. Thank you. Apologize for trying to cut you off too soon. With that, the case is submitted and we...